UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

MICHAEL MILLER,

       Defendant.

SA CR NO. SA19CR00045-JLS

I N F O R M A T I O N

[18 U.S.C. § 371: Conspiracy; 18 U.S.C. §§ 982(a)(7), 981(a)(1)(A), 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture]

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

Entities and Individuals

1.    Hospital A was a hospital in Torrance, California.

2.    Hospital B was a hospital in Torrance, California.

3.    Defendant MICHAEL MILLER ("MILLER") distributed medical devices, hardware, and instrumentation ("spinal hardware") for spinal surgeries and owned Southern California Medical Solutions, Inc. ("SoCal Med"). Unindicted Co-Conspirator A ("UCC-A") owned

Orthoneuro Surgical Associates, Inc. ("Orthoneuro"), and, together
with defendant MILLER, distributed spinal hardware.

4.   Unindicted Co-Conspirator B ("UCC-B") was an orthopedic
surgeon specializing in orthopedic spinal surgery and practiced
medicine in Torrance, California.  UCC-B married Unindicted Co-
Conspirator C ("UCC-C") on or about October 25, 2008.  UCC-B filed
for an uncontested dissolution of her marriage to UCC-C in or around
November 2013 and the marriage was formally dissolved in or around
October 2016.  UCC-B and UCC-C have remained jointly responsible for
the support of their child since March 2009 notwithstanding the
dissolution of their marriage.

5.   Goodbones LLC ("Goodbones") was an entity that UCC-B formed
in Utah on or about August 21, 2008.  According to the formation
documents, the purpose of Goodbones was to "own, manage, and consult
other companies[,]" and UCC-B was designated as the sole member.
UCC-C was added as a member of Goodbones between on or about July 13,
2009 and on or about July 19, 2011.

6.   At least as early as in or around July 2012, UCC-B told
defendant MILLER and UCC-A to form an entity that would provide
spinal hardware to be used in surgeries performed by UCC-B and
provide UCC-C an interest in the entity.

7.   On or about October 9, 2012, defendant MILLER, UCC-A, UCC-
B, and UCC-C caused the incorporation of United States Medical
Manufacturer Associated Inc. ("USMMA").  Goodbones, SoCal Med, and
Orthoneuro each held a one-third ownership interest in USMAA and each
generally received one-third of USMAA's profits.

8.   From in or around January 2013 to in or around January
2018, defendant MILLER and UCC-A, operating through USMMA, "marketed"

2

1  spinal hardware to UCC-B, and UCC-B used the spinal hardware in the
2  surgeries UCC-B performed.

3      Relevant California Laws Pertaining to Bribery and Kickbacks

4      9.   California law, including the California Business and
5  Professions Code and the California Insurance Code, prohibited the
6  offering, delivering, soliciting, or receiving of anything of value
7  in return for referring a patient for medical services or items.

8      10.   California Business & Professions Code Section 650
9  prohibited the offer, delivery, receipt, or acceptance by certain
10  licensees -- specifically including physicians -- of any commission
11  or other consideration, whether in the form of money or otherwise, as
12  compensation or inducement for referring patients, clients, or
13  customers to any person.

14      Fiduciary Duties and the Physician-Patient Relationship

15      11.   A "fiduciary" obligation generally existed whenever one
16  person -- a client -- placed special trust and confidence in another
17  -- the fiduciary -- in reliance upon the mutual understanding that
18  the fiduciary would exercise his/her discretion and expertise with
19  the utmost honesty and forthrightness in the interests of the client,
20  such that the client could relax the care and vigilance he/she would
21  ordinarily exercise, and the fiduciary knowingly accepted that
22  special trust and confidence and thereafter undertook to act on
23  behalf of the client based on such reliance.

24      12.   Physicians owed a fiduciary duty to their patients,
25  requiring physicians to act in the best interest of their patients,
26  and not for their own professional, pecuniary, or personal gain.
27  Physicians owed a duty of honest services to their patients in
28  connection with the decisions the physicians made relating to the

3

medical care of those patients, including decisions regarding the information to be provided to patients to allow them to make the informed choice of whether to undergo surgery and other medical procedures, as well as the selection or use of a provider, facility, or spinal hardware in connection with such surgeries and procedures. A patient's right to honest services from physicians included the right not to have physician-fiduciaries solicit or accept bribes and kickbacks connected to the use of spinal hardware for such patients.

B.   OBJECTS OF THE CONSPIRACY

13.   Beginning on an unknown date, but at least as early as in or around October 2012, and continuing through at least in or around January 2018, in Orange County, within the Central District of California, and elsewhere, defendant MILLER, together with UCC-A, UCC-B, UCC-C, and others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

a.   mail fraud involving the deprivation of honest services, in violation of Title 18, United States Code, Sections 1341 and 1346;

b.   wire fraud involving the deprivation of honest services, in violation of Title 18, United States Code, Sections 1343 and 1346;

c.   use of the mails or an interstate facility in aid of bribery, in violation of Title 18, United States Code, Section 1952(a)(1) and (a)(3); and

d.   engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

C. THE MANNER AND MEANS OF THE CONSPIRACY

14. The objects of the conspiracy were to be carried out, and were carried out, in substance, in the following ways, among others:

a. Defendant MILLER and UCC-A would market and distribute spinal hardware to spinal surgeons.

b. UCC-B would solicit bribes and kickbacks in violation of California law from defendant MILLER and UCC-A in exchange for using their spinal hardware in surgeries UCC-B performed at hospitals, including Hospital A and Hospital B.

c. Defendant MILLER and UCC-A would form USMMA, which they would use, to influence UCC-B to use their spinal hardware.

d. Defendant MILLER, UCC-A, UCC-B, and UCC-C, would conceal and disguise bribe and kickback payments to UCC-B by distributing USMMA's profits to UCC-C via Goodbones. UCC-C would not provide USMMA with any meaningful investment or legitimate services to justify UCC-C's one-third ownership of USMMA and profit distributions; rather, USMMA's payments to UCC-C would be made at the direction of UCC-B, who would agree to use USMMA hardware to obtain these payments.

e. As a result of the kickbacks and bribes, UCC-B would order and implant spinal hardware from USMMA in surgical patients.

f. USMMA would submit claims to hospitals requesting payment for the kickback-tainted spinal hardware used in UCC-B's surgeries.

g. Using email, text messages, and telephone calls, defendant MILLER, UCC-A, UCC-B, and others would communicate with one another regarding the performance of surgeries with the kickback-tainted spinal hardware.

h. Hospitals would reimburse USMMA for the kickback-tainted spinal hardware.

i. Defendant MILLER and UCC-A would cause USMMA to make profit disbursements -- routinely exceeding $10,000 -- to UCC-C and Goodbones for the benefit of UCC-B, and to SoCal Med and OrthoNeuro, respectively.

j. Defendant MILLER, UCC-A, UCC-B, UCC-C, and other co-conspirators would use the mails, wire communications, and facilities in interstate commerce to communicate, submit claims, obtain payment, and make profit disbursements in connection with kickback-tainted spinal hardware, as well as to solicit, offer, receive, or pay bribes and kickbacks. Had UCC-B's patients known of the bribes and kickbacks, that information would have influenced their decision making process with regard to the spinal surgeries performed on them by UCC-B.

k. In soliciting and receiving concealed bribes and kickbacks to influence UCC-B's ordering of spinal hardware from USMMA, UCC-B would deprive her patients of their right to honest services.

l. To avoid law enforcement detection of the bribe and kickback arrangement, UCC-B would instruct co-conspirators that, if law enforcement questioned them about the scheme, they should refuse to talk to law enforcement and alert her. Relatedly, UCC-A and others would inform UCC-B, or cause UCC-B to be informed, that she was the target of a covert law enforcement operation so that UCC-B would not make incriminating statements about the foregoing bribe and kickback arrangement.

1  D.    EFFECTS OF THE CONSPIRACY

2      15.   Had hospital facilities and patients known the true facts

3  regarding the payment of bribes and kickbacks in connection with use

4  of the kickback-tainted hardware: (a) hospitals would have refused to

5  pay claims for the spinal hardware, would have revoked UCC-B's

6  privileges, and/or would have prohibited USMMA from providing such

7  hardware at the hospital facility; and (b) patients would have more

8  closely scrutinized the need for a surgery and/or the use of spinal

9  hardware, would have sought second opinions from physicians who did

10 not have a financial conflict of interest, and/or would have insisted

11 on a different surgeon.

12     16.   Between 2013 and 2017, inclusive, defendant MILLER and UCC-

13 A paid UCC-B and UCC-C, through Goodbones, roughly one-third of the

14 profits from USMMA, that is approximately $2 million, in order to

15 induce UCC-B to use USMMA products.

16 E.    OVERT ACTS

17     17.   On or about the following dates, in furtherance of the

18 conspiracy and to accomplish the objects of the conspiracy, defendant

19 MILLER, UCC-A, UCC-B, UCC-C, and other co-conspirators known and

20 unknown to the United States Attorney, committed, willfully caused

21 others to commit, and aided and abetted the commission of the

22 following overt acts, among others, within the Central District of

23 California and elsewhere:

24     Overt Act No. 1:    On or about October 9, 2012, defendant

25 MILLER, UCC-A, UCC-B, and UCC-C caused the incorporation of USMMA.

26     Overt Act No. 2:    On or about October 24, 2013, defendant

27 MILLER and UCC-A caused USMMA to issue an invoice to Hospital B, in

28

7

the amount of $20,235, for kickback-tainted spinal hardware UCC-B used in surgery.

    <u>Overt Act No. 3:</u>   On or about November 14, 2013, Hospital B sent USMAA a check for $30,628 to pay for spinal hardware associated with a surgery involving kickback-tainted hardware.

    <u>Overt Act No. 4:</u>   On or about December 11, 2014, defendant MILLER and UCC-A caused USMMA to issue an invoice to Hospital B, in the amount of $12,029, for kickback-tainted spinal hardware UCC-B used in surgery.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(1) and (7), 981(a)(1)(C), 28 U.S.C. § 2461(c)]

18.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(1) and (7), 981 (a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction under Count One of this Information.  The defendant shall forfeit the following:

a.   All right, title, and interest in any property, real or personal, involved in such offense, and any property traceable to such property;

b.   All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense; and

c.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs a through b.

19.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b), the defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of that defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the

9

1  jurisdiction of the Court; (d) has been substantially diminished in

2  value; or (e) has been commingled with other property that cannot be

3  divided without difficulty.

4

5                                  TRACY L. WILKISON
                                   Attorney for the United States,
6                                  Acting Under Authority Conferred
                                   by 28 U.S.C. § 515
7

8

9

10                                 LAWRENCE S. MIDDLETON
                                   Assistant United States Attorney
11                                 Chief, Criminal Division

12                                 RANEE A. KATZENSTEIN
                                   Assistant United States Attorney
13                                 Chief, Major Frauds Section

14                                 JOSEPH T. MCNALLY
                                   ASHWIN JANAKIRAM
15                                 SCOTT D. TENLEY
                                   Assistant United States Attorneys
16

17

18

19

20

21

22

23

24

25

26

27

28